■ In the Matter of ARNOT-OGDEN MEDICAL CENTER et al., Respondents-Appellants, v MARK R. CHASSIN, as Commissioner of Health of the State of New York, et al., Appellants-

Respondents. [646 NYS2d 426] —Mikoll, J. (1) Cross appeals from a judgment of the Supreme Court (Hughes, J.), entered June 28, 1995 in Albany County, which partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondents delaying indefinitely the distribution of moneys pursuant to the Maintenance of Effort System, and (2) appeal from a judgment of said court, entered September 8, 1995 in Albany County, which, upon reconsideration, amended the prior judgment.

Petitioners are 18 New York hospitals governed by the Public Health Law and regulations promulgated thereunder. At issue in this litigation are petitioners' reimbursement rates calculated under a "maintenance of effort" (hereinafter MOE) formula providing for reallocation of bad debt and charity care (hereinafter BDCC) pool funds for rate years 1983 to 1987. This reallocation involves the recoupment of funds from certain hospitals and the redistribution of those funds to other hospitals (see, Public Health Law § 2808-c [4] [e]; § 2807-a [8] [e]; see generally, 10 NYCRR 86-1.11 [g], [p]). The MOE provision requires that an annual review be conducted within regional areas to ascertain changes in the proportional amounts of BDCC funds provided and that available BDCC funds be reallocated accordingly.

On January 14, 1994, the Department of Health (hereinafter DOH) sent a letter notifying hospitals of its intent to implement the MOE provisions for the years 1983 through 1987. Subsequently, DOH circulated another letter stating, inter alia, that hospitals owed funds "will receive distributions on a quarterly basis, beginning in the fourth month after implementation of the recoupments", i.e., August or September 1994. However, on August 11, 1994 a temporary restraining order (hereinafter TRO) was issued by Supreme Court in the case of St. Joseph's Hosp. Health Ctr. v Department of Health (Sup Ct, Onondaga County, Aug. 11, 1994, Pooler, J.) enjoining respondents from recouping money from the plaintiffs in that action, from whom money was to be obtained pursuant to reallocations under the MOE regulations. DOH then announced in a letter dated August 17, 1994 that because of the TRO, scheduled distributions of MOE recoupments would be delayed indefinitely.

Thereafter, petitioners commenced the instant CPLR article 78 proceeding and action for declaratory judgment seeking, inter alia, an order compelling payment of $52,841,672 of MOE funds. Petitioners also requested counsel fees pursuant to CPLR article 86.

Subsequent to service of the petition in this proceeding, Supreme Court, Onondaga County, granted a preliminary injunction in the *St. Joseph's* case *(supra)* on February 22, 1995 restraining respondents from recouping moneys from the plaintiff hospitals under the MOE provisions *(see, St. Joseph's Hosp. Health Ctr. v Department of Health*, Sup Ct, Onondaga County, Feb. 22, 1995, Murphy, J.). Additionally, another hospital owing money sued for a preliminary injunction against respondents. Respondents stipulated to be enjoined from recouping those MOE reallocations and Supreme Court, Westchester County, ordered the stipulation to be binding everywhere *(see, County of Westchester v Department of Health*, Sup Ct, Westchester County, Mar. 8, 1995, Donovan, J.).

Respondents in their answer generally denied that petitioners were currently entitled to additional reimbursement and affirmatively alleged that DOH will distribute BDCC funds in accord with MOE methodology when the money is recouped from other hospitals.

Supreme Court issued a decision finding, *inter alia*, that *Matter of County of Wyoming v Division of Criminal Justice Servs.* (83 AD2d 25) controls the mandamus claim and opined that reallocation is to take place after an annual review and issuance of a definitive finding, and that respondents, conceding that these events took place, "did not have the discretion to depart from their own schedule due to the existence of other litigation". Supreme Court then granted the petition and annulled DOH's determination of August 17, 1994, directed respondents to implement the reallocation pursuant to the Public Health Law and the appropriate regulations, excepting from the recoupment those funds subject to the preliminary injunction in the *St. Joseph's* case and these funds from the *County of Westchester* case. Further, the court dismissed so much of the petition seeking recovery of counsel fees pursuant to CPLR article 86. Judgment thereon was entered on June 28, 1995. Respondents appeal from the judgment except so much thereof as dismissed petitioners' request for counsel fees. Petitioners cross-appeal from so much of the judgment as denied them the full relief sought as well as counsel fees.

Thereafter, respondents moved for reconsideration claiming that after Supreme Court's decision herein but before entry of judgment, Supreme Court, Onondaga County, in *New York City Health & Hosps. Corp. v Chassin* (Sup Ct, Onondaga County, May 24, 1995, Hays, J.) granted plaintiffs in that action the same injunctive relief, via a stipulation, as was granted in the *St. Joseph's* and the *County of Westchester* cases *(supra)*.

Consequently, respondents requested amendment of the judgment to reflect the stipulation by providing that DOH could not recoup funds or disburse funds previously recouped from the hospitals subject to the present injunction. Supreme Court, in a decision entered September 8, 1995, granted the motion over petitioners' opposition. Petitioners appeal this judgment.

Respondents' contention that Supreme Court erroneously annulled DOH's determination to delay the reallocation of BDCC funds and compel respondents to implement the MOE reallocation plan has merit. The judgment entered June 28, 1995 should be modified by reversing same, dismissing the petition in its entirety and, as so modified, affirmed. The appeal from the judgment entered September 8, 1995 should be dismissed as academic.

DOH by statute and regulation has discretion to change the original allocation (*see*, Public Health Law § 2808-c [4] [e]; § 2807-a [8] [e]; 10 NYCRR 86-1.11 [g] [7]). Here, DOH performed an annual review and made definitive findings in June 1994. Then in August 1994 DOH reconsidered and determined that the reallocation would be delayed indefinitely because of the TRO and other litigation.

Petitioners' claim that Supreme Court properly held that respondents failed to perform a mandatory duty to implement its scheduled reallocation by not paying money due to petitioners is rejected. DOH could properly delay the allocation. The time frame is not ministerial but discretionary and mandamus to compel will generally not lie (*see, Matter of Brusco v Braun*, 84 NY2d 674, 679; *Matter of Mullen v Axelrod*, 74 NY2d 580, 583). While Supreme Court correctly found that respondents had "discretion as to the timing of the reallocation", its conclusion that respondents did not have discretion to depart from the schedule set forth was incorrect.

Absent a statutory or regulatory prohibition, respondents have "inherent power to reconsider [their] determination upon a showing of new facts" (*Matter of Carter v Adirondack Park Agency*, 203 AD2d 788, 789, *lv dismissed* 84 NY2d 1026; *see, Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d 269, 277). Respondents' exercise of that discretion by delaying implementation of the scheduled reallocation will not be disturbed. The TRO and other pending litigation affected respondents' ability to acquire the BDCC funds necessary to carry out its proposed reallocation. Respondents' action is not arbitrary and capricious nor does it lack a sound basis in reason in light of the relevant facts (*see, Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231).

Petitioners' reliance on the holding in *Matter of County of Wyoming v Division of Criminal Justice Servs.* (83 AD2d 25, *supra*) is misplaced as the facts are materially different. The delay in *Matter of County of Wyoming* was not rational because there the Division of Criminal Justice Services was required by law to approve the vouchers which it refused to do. Here, there was no refusal to do the required act, only a reasonable delay in performance.

In view of our finding that respondents' action was proper, the argument regarding reconsideration is academic. Likewise, since we find that respondents should have prevailed, petitioners' request for counsel fees pursuant to CPLR article 86 is academic.

Cardona, P. J., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment entered June 28, 1995 is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; petition dismissed in its entirety; and, as so modified, affirmed. Ordered that the appeal from judgment entered September 8, 1995 is dismissed, without costs, as academic.